IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-01881-WYD-BNB

CHARLES M. KOVACS,
CHRISTINE H. BUKALA,
DANNY M. TRAMMELL,
ROBERT C. McGRATH, and
JOSEPH J. RAGUSA,

      Plaintiffs,

v.

THE HERSHEY COMPANY,  a Delaware corporation,

      Defendant.
_____

**ORDER**
_____

THIS MATTER came before the Court on a hearing on three sets of objections to rulings of Magistrate Judge Boland.  These objections include:  (1) Defendant Hershey's Rule 72 Objections to Order Requiring Corporate Executives to Testify in Person During Plaintiffs' Case (filed July 14, 2006); (2) Hershey's Rule 72 Objections to July 13, 2006 Discovery Order (filed July 27, 2006); and (3) Plaintiffs' Rule 72 Objections to July 13, 2006 Order (filed July 27, 2006).  For the reasons stated below, Hershey's objections are overruled.  Plaintiffs' objections are sustained in part and overruled in part.

I.    <u>Standard of Review</u>

The three appeals involve rulings on nondispositive matters.  Thus, the standard of review is whether the decision is "clearly erroneous or contrary to law."

FED. R. CIV. P. 72(a).  "Under the clearly erroneous standard of review, the magistrate

judge's findings should not be rejected merely because the court would have decided

the matter differently."  *Sedillos v. Bd. of Education of School Dist. No. 1*, No. 03-CV-

01526-EWN-BNB, 2005 WL 2086008, at *33 (D. Colo. 2005) (citing *Anderson v. City of*

*Bessmer*, 470 U.S. 564, 573 (1985)).  "Rather, the district court must affirm the decision

of the magistrate judge unless 'on the entire evidence[, the district court] is left with the

definite and firm conviction that a mistake has been committed.'"  *Id.* (quotation

omitted).

II.    Pending Objections

    A.    Defendant Hershey's Rule 72 Objections to Order Requiring Corporate
          Executives to Testify in Person During Plaintiffs' Case

        These objections relate to Magistrate Judge Boland's oral ruling at the Pretrial

Conference in June 2006 that certain of Hershey's top executives would be required to

appear in person as part of Plaintiffs' case-in-chief if Hershey calls them at trial.  These

executives are Marcella K. Arline, Byron L. Klemens, Kathryn M. McGrath, and Thomas

C. Smuda.  All of them live and work in Pennsylvania.[1]

        This objection is overruled.  Hershey has not shown that Magistrate Judge

Boland ruled contrary to law, and I find that there was no clear error in connection with

the ruling on this issue.  I first note that Magistrate Judge Boland stated cogent reasons

why he was compelling Hershey's executives to appear live during Plaintiffs' case-in-

---

[1]  Hershey does not object to Magistrate Judge Boland's ruling that certain other Hershey
personnel  (William Rossi, Mary Oates Walker, David West and Pamela Zerphy) must appear in person
for Plaintiffs' case.

chief.  *See* Ex. B. to Hershey's Objections at 15-17.  Hershey did not address much of

the Magistrate Judge's reasoning for his ruling.  Instead, Hershey argues that it will be

unduly burdened if forced to lose the services of these "key personnel" both during

Plaintiffs' case and during Hershey's defense case.  However, Hershey did not

substantiate this argument in any manner.  Accordingly, I find no clear error in

connection with Magistrate Judge Boland's rejection of this argument.

Further, I note that this is an issue within Hershey's control.  Instead of having

these executives travel to Colorado twice, Hershey can do what Magistrate Judge

Boland suggested—present its examination of these witnesses after Plaintiffs'

examination and during Plaintiffs' case in chief.  While Hershey argues that this will

result in a broken up and confusing presentation to the jury, it provides no examples or

reasons why this would be the case.  Further, I routinely order this to occur in other

cases and it does not appear to be too confusing for the jury.

Finally, Hershey relies on the fact that this requirement could have been avoided

had Plaintiffs stipulated to the motion to transfer the case to Pennsylvania.  This

argument is disingenuous and is not a ground to overrule Magistrate Judge Boland.

Regardless of the merits of the motion to transfer or the validity of Plaintiffs' opposition

thereto, the fact remains that the motion to transfer was denied by the Court.  The issue

is now moot.  Further, any argument in that motion about out of state witnesses not

being within the subpoena power of this Court is irrelevant, since the witnesses at issue

are Hershey executives under Hershey's control.

B.     Hershey's Rule 72 Objections to July 13, 2006 Discovery Order

On July 13, 2006, Magistrate Judge Boland issued a lengthy Order ruling on

certain motions to compel filed by Plaintiffs.  Hershey objects to the Order in two

respects:  (1) the portion of the Order granting Plaintiffs' Motion to Compel Deposition of

Jennifer Chung ["Chung"], and (2) the portion of the Order requiring Hershey to produce

certain categories of documents as a result of Hershey's disclosure of certain notes

authored by Chung.

1.     Deposition of Jennifer Chung

As noted by Magistrate Judge Boland, Jennifer Chung is a lawyer with the law

firm of Seyfarth Shaw LLC in Washington, D.C., and is one of several lawyers who have

entered appearances as counsel for Defendant.  Magistrate Judge Boland granted

Plaintiffs' Motion to Compel Chung Deposition after conducting a detailed analysis of

the issue.  *See* Order of July 13, 2006, at 10-18.  As a summary, the Magistrate Judge

ordered that Chung's deposition should be allowed as to the meaning of certain notes

authored by Chung that Hershey produced to Plaintiffs in connection with a mass

document production.  The notes, dated April 29, 2003 and May 2, 2003, summarize

attorney-client communications between Chung, outside counsel for Hershey, and Mary

Oates Walker ["Walker"], Hershey's in-house counsel.

Plaintiffs assert that these notes support their core contention—that Hershey

designed and implemented an involuntary retirement plan it knew was illegal.  Further,

Plaintiffs assert that the notes make clear that the decision to provide impermissible age

data to the selection team members was made or sanctioned by Hershey's attorneys,

and that age was considered a relevant criterion on which to compare candidates.  In other words, Plaintiffs claim that the notes are a "smoking gun" that shows Hershey (with the aid of Chung and Walker) designed an involuntary retirement plan that they knew would expose Hershey to age discrimination claims, and that Chung and Walker decided to reduce the company's exposure by not complying with the OWBPA (Older Workers Benefit Protection Act).

After analyzing factors stated in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) and cited with approval by the Tenth Circuit, Magistrate Judge Boland found that the deposition of Chung "is necessary under the <u>Shelton</u> factors and must be allowed."  Order at 17-18.  He ordered the deposition to occur by August 18, 2006, in his jury deliberation room.  *Id.* at 18.  Hershey argues that the ruling is contrary to law because this case does not present exceptional circumstances warranting the deposition of a trial counsel.  I disagree.

I first note that the Tenth Circuit in *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995) approved the three-part test for determining when depositions should be allowed of counsel that was originally stated by *Shelton*.  *Boughton* held that "depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Boughton*, 65 F.3d at 829 (citing *Shelton*, 805 F.2d at 1327); *see also Thiessen v. General Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001), *cert. denied*, 536 U.S. 934

(2002).  Magistrate Judge Boland noted the correct three-part test for determining whether a deposition of counsel should be permitted, and thus did not rule contrary to law on this issue.

Hershey argues that the Magistrate Judge clearly erred in his ruling because Plaintiffs did not show that each part of the *Shelton* test was met.  Hershey asserts more specifically that the first part of the test was not met since Chung is not the only source of information regarding the subject matters discussed in the notes.  It is argued in that regard that the subject matter of the notes related to the selection process, and that Hershey executives and the selection team could be deposed as to issues related to that process.

I find that Magistrate Judge Boland did not clearly err or rule contrary to law in finding that the first test was met.  He recognized that the notes were important because they constitute a waiver of the attorney-client privilege as to topics that related to the selection process.  Magistrate Judge Boland was correct that Chung is the only person who can interpret those notes, as she drafted them.  Further, Magistrate Judge Boland correctly noted that Hershey's in-house counsel who was involved in the conversations that gave rise to the notes had been deposed and had no information about the notes or the conversation.  This leaves only Chung to testify about the substance of those discussions.  Thus, I do not find clear error in the ruling that Plaintiffs met the first element of the test.

Hershey also challenges the second and third elements—arguing that the information is not relevant and crucial to Plaintiffs' case.  Magistrate Judge Boland

found that the notes "certainly are relevant to Plaintiffs' claims" because they "concern the manner in which defendant was making employment decisions."  Order at 17-18. Hershey cannot seriously take issue with this finding, since the notes clearly reference employment decisions being made by Hershey.

Hershey argues, however, that the notes are not specific to Plaintiffs' claims and that they are thus not relevant since the collective action has been dismissed.  It is true that the pattern and practice method of proving discrimination may not be available to Plaintiffs since the collective action allegations have been dismissed.  *See Bacon v. Honda of AmericaManufacturing, Inc.*, 370 F.3d 565, 575 (6th Cir. 2002).  However, Plaintiffs are still entitled to find out about the decisions made by Hershey as to the Early Retirement Program ["ERP"] at issue and present evidence about how those decisions affected their individual claims.  In other words, the evidence may well be relevant to their individual claims even though the collective action allegations are no longer in the case.  *Id.* (pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell-Douglas* framework).  Thus, I find that Magistrate Judge Boland did not clearly err or rule contrary to law in finding that Plaintiffs met all three parts of the *Shelton* test.

Hershey also argues that Plaintiffs' references to a "smoking gun" and the design of an "illegal involuntary retirement plan" have no support in any reasonable reading of the notes.  Further, it is argued that the notes do not support Plaintiffs' contention that Hershey's 2003 ERP was involuntary.  Instead, Hershey asserts that the statement in the April 29 notes "here [it] won't be [a] voluntary exit incentive [program] (Mot. to

Compel, Ex. 1) can reasonably be read only as a reference to Hershey's 2003 Sales Force Involuntary Severance Plan (a termination plan for employees regardless of age). Hershey states that Plaintiffs and Magistrate Judge Boland inaccurately put a period between "voluntary"' and "exit incentive" in interpreting the notes when the term "voluntary exit incentive" is a term of art under the OWBPA. Hershey also makes other interpretations of Chung's notes which are inconsistent with Plaintiffs' interpretations. Finally, it is contended that the Magistrate Judge engaged in other improper speculation.

I find that Magistrate Judge Boland did not clearly err by relying on improper speculation. Both sides interpret Chung's April 29 notes very differently. While Hershey disagrees with Plaintiffs' interpretation, arguing that the notes do not relate to the 2003 ERP, this is not clear from the notes. Magistrate Judge Boland simply recognized that the notes could be interpreted in a way that supports Plaintiffs' claims, without actually ruling on what the correct interpretation of the notes is. I find no error in connection with this. Indeed, the vastly different interpretations of the notes support, in my opinion, the ruling that Chung's deposition needs to occur.

I do, however, disagree with that portion of the Order where Magistrate Judge Boland appeared to adopt Plaintiffs' interpretation of the notes that there should be a period after the end of "voluntary" and before "exit incentive" in connection with the April 29 notes. *See* Order at 12. That period is not in the notes and it is up to Chung, not the Court, to clarify whether a period should be placed where Plaintiffs believe it should. However, I find that this does not effect the substance of the Recommendation in

connection with Chung and her notes.  As noted earlier, the notes are unclear as to their meaning, as evidenced by the parties' completely different interpretations.  Chung's deposition is necessary so that she can clarify the notes and what they mean, including the meaning of the paragraph at issue in the April 29 notes.

> ### 2.   The Required Disclosure of Certain Categories of Attorney-Client Privileged Documents

Hershey also objects to that portion of the Order that required Hershey to produce certain categories of documents as a result of its disclosure of privileged documents.  Magistrate Judge Boland generally agreed with Hershey that a large number of the materials at issue were not subject to the attorney-client privilege and that there was no waiver of the privilege with respect to those documents.  Order of July 13, 2006, at 24.  However, he found that there was a waiver with respect to three documents, including Chung's notes and an e-mail from Hershey's in-house counsel. *Id.* at 25-26.  While Hershey did not seriously dispute that there was a waiver of the privilege as to those documents, it argued before Magistrate Judge Boland that the waiver as a result of Chung's April 29 notes was limited to two areas: (1) that the OWBPA applies to group term programs, and (2) that such programs may give rise to an "age claim risk." *See id.* at 25.  Plaintiffs argued that the waiver was much broader.

Magistrate Judge Boland rejected both sides' arguments about the scope of the privilege, thus giving rise to the objections at issue.  He found that Plaintiffs "may inquire into the 'subject matter'" of the April 29 notes. *Id.* at 26.  He further found that Hershey "has waived the attorney-client privilege as to the entirety of the communications made

during the selection process concerning (1) whether this case involves a 'group term program'; (2) whether the Older Workers' Benefit Protection Act and its implementing regulations apply to the facts of this case, and the exposure of Hershey to an 'age claim risk' if the act and regulations do apply; and (3) whether any 'adverse impact analyses' were conducted by Hershey in connection with its 2003 Sales Force Early Retirement Plan." *Id.* He also found that Hershey waived the privilege as to "the communications between Mary Oates Walker and Pat Mooney concerning Hershey's document retention after Mr. Montagne filed his charge of discrimination." *Id.* at 26.

Thus, Magistrate Judge Boland ordered Hershey to produce "all additional materials concerning these topics" and stated that Plaintiffs may inquire during Chung's deposition "about the topics waived by the production of Exhibit K." *Id.* He agreed with Hershey, however, "that the waiver of the attorney-client privilege by the production of Exhibits K and V is limited to the narrow subjects of those exhibits, and does not constitute the sweeping waiver suggested by the plaintiffs." *Id.* at 26-27.

Hershey asserts that Magistrate Judge Boland clearly erred or ruled contrary to law in requiring Hershey to disclose overly broad categories of attorney-client privileged materials based on its production of the April 29 notes. More specifically, Hershey argues that the waiver ruling was not properly limited to the specific issues discussed in the notes, and that the notes refer to the ISP, not the 2003 ESP under which Plaintiffs were terminated. Additionally, Hershey contends that the notes do not address whether this case involves a group termination program, but discusses group termination programs generally. Thus, it is argued that the waiver must be limited to that discrete

issue, and that the magistrate judge erred in allowing production of documents concerning whether the OWBPA applies "to the facts of this case and the exposure of Hershey to an "age claim risk" if it does apply.  Hershey concludes that any waiver of the privilege resulting from production of the April 29 notes must be limited to:  (1) whether the OWBPA applies to "group term programs", (2) generally whether such programs give rise to "age claim risk", and (3) whether Hershey conducted any "adverse impact analyses" in connection with the 2003 ERP.

I first state that I agree with Magistrate Judge Boland that the privilege was waived by production of Chung's notes and Walker's e-mail.  *See Sedillos v. Bd. of Education of School Dist. No. 1*, No. 03-CV-01526-EWN-BNB, 313 F. Supp. 2d 1091, 1092 (D. Colo. 2004) ("the attorney-client privilege can be waived by '[a]ny voluntary disclosure. . .'of an otherwise privileged confidential communication'") (quoting *United States v. Bernard*, 877 F.2d 1463, 1454 (10th Cir. 1989) (further quotation omitted).  Hershey does not disagree that it waived the privilege in connection with its disclosure of these notes.  It just contests the scope of the waiver, arguing that Magistrate Judge Boland's ruling was unreasonably broad.  I disagree.

Waivers of the privilege have been held to be "narrowly construed".  *Dexia v. Credit Local v. Rogan*, 231 F.R.D. 268, 276 (N.D. Ill. 2004).  "The scope of the waiver turns on the scope of the . . . disclosure, and the inquiry is whether the . . . disclosure involves the same 'subject matter' as the desired testimony.'"  *Sedillos*, 313 F. Supp. 2d at 1094 (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).  On the other hand, "'[w]here a party injects part of a communication as evidence, fairness

-11-

demands that the opposing party be allowed to examine the whole picture.'" *Id.* (quotation omitted). Further, "[t]he attorney-client privilege cannot be used as both a sword and a shield." *Id.* at 1093. In other words, once the privilege is waived, it cannot then be used as a shield "to prevent the plaintiffs from exploring fully the substance and circumstances of that advice." *Id.*

Here, Magistrate Judge Boland correctly stated the law and adopted a reasonable compromise between the law that would allow Plaintiffs to examine the whole picture and the law that holds that the waiver is limited to the subject matter disclosed. His ruling tied the scope of inquiry and document production to specific topics that were addressed in the notes, while allowing Plaintiffs to examine the whole picture in connection with those subject areas. On the other hand, he appeared to recognize that this limited waiver of the privilege does not mean that Plaintiffs get to open the door to other areas of examination not directly at issue in the notes or e-mail. Thus, I find that Magistrate Judge Boland's Order was not unreasonably broad.

Hershey's argument is primarily based on its interpretation of the notes, *i.e.*, that the notes' reference to voluntary exit incentives should be read together (which Plaintiffs dispute) and that this relates to the ISP and not to the 2003 ESP. However, this interpretation is not clear from the notes and Plaintiffs should be allowed to depose Chung as to her meaning about those terms. Indeed, the fact that the parties have such widely varying interpretations of the notes suggests that this needs to be fleshed out in the deposition, as the Magistrate Judge recognized.

I also find that Magistrate Judge Boland did not engage in improper speculation or inferences in connection with the notes.  Instead, he correctly realized that the notes *could* be interpreted in the manner suggested by Plaintiffs and that Plaintiffs should be allowed to inquire into this.  Further, Plaintiffs have established that Chung was intimately involved in the selection process.  Finally, I think that in order to get the whole picture, *i.e.*, related to the context of this case, Magistrate Judge Boland correctly recognized that Plaintiffs should be allowed to inquire in Chung's deposition and obtain documents as to how the statements made in the notes about the selection process impact this case and their individual claims.

In short, I find that Magistrate Judge Boland correctly applied the law, and thus did not rule contrary to law in rejecting Hershey's argument about the scope of the waiver of the privilege.  I further find that he did not clearly err in his ruling as to disclosure of documents and the scope of Chung's deposition.  Accordingly, Hershey's Rule 72 Objections to July 13, 2006 Discovery Order are overruled.

> C.    <u>Plaintiffs' Rule 72 Objections to July 13, 2006 Discovery Order</u>

Plaintiffs also object to portions of the July 13 Order, asserting that Magistrate Judge Boland clearly erred in the following respects:  (1) by not acknowledging that Hershey's top sales executive, David West, waived the privilege during his deposition by revealing confidential attorney-client communications; (2) by relying on Hershey's false representations that Hershey has no plans to try to introduce evidence about legal advice; (3) by ignoring Plaintiffs' *prima facie* showing that Hershey engaged in a plan to defraud and violate Plaintiffs' rights, aided by its counsel; (4) by too narrowly defining

the scope of subject areas waived; and (5) by placing the burden of proof on Plaintiffs regarding waiver of the attorney-client privilege instead of Hershey and by not reviewing Hershey's documents that are claimed to be privileged *in camera*.  I address each of these below.

        1.        <u>The Deposition Testimony of David West as a Waiver of the Attorney-Client Privilege</u>:

Plaintiffs argue that Magistrate Judge Boland clearly erred by not acknowledging that Hershey's top sales executive, David West, waived the privilege during his deposition by revealing confidential attorney-client communications between himself and Burton Snyder, Hershey's top legal executive.  Plaintiffs assert that this testimony related to how Hershey could conform with the document retention and record-keeping policies given that it was departing from normal employee selection procedures. Plaintiffs assert that this was raised in Plaintiffs' motion to compel, but Hershey and the Magistrate Judge did not mention or discuss this.  They further assert that Magistrate Judge Boland's failure to acknowledge this is plain error.  Plaintiffs request that the Court find that West did waive the privilege and order Hershey to produce all privileged communications concerning document retention and destruction and record-keeping surrounding the 2003 ERP and the selection process.

Turning to my analysis, "'[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"  *In Re Qwest Communications Intern., Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quotation omitted). "In order to be covered by the attorney -client privilege, a communication between a

lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

I agree with Plaintiffs that Magistrate Judge Boland erred in not ruling on this issue, and sustain this portion of their objections. The issue of whether David West waived the attorney-client privilege in his deposition testimony is remanded to Magistrate Judge Boland for a ruling. I note in connection with this remand that the matter needs to be addressed on the pleadings already filed by the parties. I did, however, permit Hershey to file a supplemental pleading pointing out to Magistrate Judge Boland which arguments contained in Hershey's response to the motion to compel address this issue. Hershey filed that supplement on September 25, 2006.

2.      Reliance on Advice of Counsel as a Waiver of the Privilege

Plaintiffs argue that Magistrate Judge Boland improperly relied on Hershey's representation that it would not seek to introduce any form of advice of counsel evidence to the jury. *See* Order of July 13, 2006, at 28. It is argued that this reliance was misplaced based on Hershey's endorsement of Walker, its in-house counsel, as a trial witness to testify in areas in which advice of counsel will be at issue and Hershey's exhibit list that contains attorney-client privileged communications. I overrule these objections and affirm Magistrate Judge Boland's Order on this issue.

The Tenth Circuit recognizes that "reliance upon a defense of advice of counsel has, in some instances, been held to constitute a waiver of the attorney-client privilege." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 700 (10th Cir. 1998); *see also Sedillos*, 313 F. Supp. 2d at 1093. "The elements of such a defense require a

-15-

showing of 1) a request for advice of counsel on the legality of a proposed action, 2) full disclosure of the relevant facts to counsel, 3) receipt of advice from counsel that the action to be taken will be legal, and 4) reliance in good faith on counsel's advice." *C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1436 (10th Cir. 1988).

In this case, Hershey has plainly stated that it does not intend to rely on advice of counsel as a defense.  Further, Hershey asserts that Walker was not designated as a witness to testify about legal advice given to Hershey or to participants in the selection process.  Instead, Hershey states that she is a fact witness with direct knowledge of the selection process, and can provide testimony relating to nonprivileged communications relevant to Hershey's personnel sections in 2003.

I find that Magistrate Judge Boland did not clearly err in accepting these representations, since the Court is entitled to rely on representations of counsel as an officer of the Court about what evidence or defenses will be presented on behalf of a client.  Further, the designation of Walker's testimony does not necessarily show, as Plaintiffs' argue, that Hershey will be relying on advice of counsel.  Obviously, however, if Hershey does actually present advice of counsel testimony at trial, Plaintiffs may ask for appropriate sanctions as a remedy.

### 3.    The Crime-Fraud Exception to the Attorney-Client Privilege

Plaintiffs argue that Magistrate Judge Boland clearly erred by ignoring Plaintiffs' *prima facie* showing of the applicability of the fraud/crime waiver of the attorney-client privilege.  Plaintiffs assert that the record presented to the Court is clear that Hershey, with the aid of its counsel, conspired to violate the OWBPA, defraud and mislead the

-16-

Plaintiffs, and illegally destroy relevant evidence which federal law mandates be preserved.  Accordingly, Plaintiffs assert that the crime/fraud exception is applicable and request an order that Hershey be required to produce privileged information related to the alleged frauds.

I affirm Magistrate Judge Boland's Order on this issue and overrule the objections.  The attorney-client privilege does not apply when the client consults an attorney to further a crime or fraud.  *In Re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998).  In order to invoke this exception, "the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact."  *Id*.  "The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it."  *Id*.

In the case at hand, Plaintiffs do not dispute that Magistrate Judge Boland correctly stated the law.  Thus, I find that Magistrate Judge Boland did not rule contrary to law.  I further find that Magistrate Judge Boland did not clearly err in finding that Plaintiffs did not meet their burden of showing that the exception applies in this case.  While Plaintiffs believe that the evidence substantiates a planned decision to not comply with the mandates of the OWBPA and to defraud the Plaintiffs, this is argument based on Plaintiffs' interpretation of Chung's notes and the other evidence.  The evidence is unclear on this issue, and can be interpreted in a manner contrary to that advocated by

Plaintiffs.  Thus, I find that Plaintiffs have not presented a prima facie case that Hershey was engaged in a fraud or crime with its counsel.

> 4.    Whether Magistrate Judge Boland Too Narrowly Defined the Scope of Subject Areas Waived

Plaintiffs argue that Hershey broadly waived the privilege in areas which serve as the entire framework for Plaintiffs' claims.  Plaintiffs refer to the disclosure of the April 29 notes of Chung and the e-mail from Hershey's counsel about document retention —Exhibits K and V to Mot. to Compel.  Despite the alleged breadth of these exhibits, it is argued that Magistrate Judge Boland erred by ruling that Hershey only waived the privilege as to the "narrow subjects" and precise words of the notes and e mail.  *See* Order of July 13, 2006, at 26.  Instead, Plaintiffs contend that they should be allowed to examine the whole picture by being given access to a broad range of privileged communications.

I find that Plaintiffs' objections on this issue should be overruled.  As stated previously, waivers of the privilege have been held to be "narrowly construed."  *Dexia v. Credit Local v. Rogan*, 231 F.R.D. 268, 276 (N.D. Ill. 2004).  "The scope of the waiver turns on the scope of the . . . disclosure, and the inquiry is whether the . . . disclosure involves the same 'subject matter' as the desired testimony.'"  *Sedillos*, 313 F. Supp. 2d at 1094 (quotation omitted).  On the other hand, "'[w]here a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture.'"  *Id.* (quotation omitted).

In this case, the April 29 notes are unclear as to whether they are referring to the 2003 ERP and the other subject matter areas identified by Plaintiffs.  Thus, I find that Magistrate Judge Boland did not clearly err in connection with his interpretation of the subject matters of the notes.  However, if Chung's deposition substantiates Plaintiffs' interpretation of the notes, Plaintiffs may renew their request for production of privileged documents regarding subject matters not identified by Magistrate Judge Boland as having been waived.

     5.    <u>Whether the Burden of Proof Regarding Waiver Was Improperly Placed on Plaintiffs and Whether the Privileged Documents Should Have Been Reviewed *In Camera*</u>

Finally, it is argued that Magistrate Judge Boland's ruling regarding certain of Hershey's redacted documents improperly put the burden of proving the waiver of the privilege on Plaintiffs and impermissibly faulted them for failing to do the impossible—present evidence of what lies beneath the redactions in the Hershey's documents.  Plaintiffs also claim that Magistrate Judge Boland erred by not reviewing *in camera* Hershey's sets of documents that were claimed to be privileged and/or irrelevant.   Thus, Plaintiffs assert that I should reject the findings at pages 29-32 of the July 13, 2006 Order and remand with instructions that Magistrate Judge Boland conduct an *in camera* review of the unredacted version of the documents.

I first address the applicable burden of proof.  It is undisputed that the party resisting discovery based on the assertion of a privilege has the burden of proving it. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002).  The disputed issue is who has

the burden of showing waiver.  The parties did not adequately brief this issue.  Plaintiffs

cited to a case relying on Kansas law, and Hershey cited to a case construing Colorado

law.  However, as Magistrate Judge Boland recognized in his Order, the federal

common law of privileges applies since federal law provides the substantive law in this

case.  *See* Order of July 13, 2006, at 20-21 (citing *Everitt v. Brezzel*, 750 F. Supp. 1063,

1066 (D. Colo. 1990)); *see also Atteberry v. Longmont United Hospital*, 221 F.R.D. 644,

646-47 (D. Colo. 2004).

My research on the issue suggests that Plaintiffs are correct.  Under Tenth Circuit

law Hershey has the burden of showing both that the communications at issue are

privileged and that the privilege has not been waived.  *See United States v. Lewis*, No.

90-4066, 1991 WL 172666, at *2 (10th Cir. 1991).  While *Lewis* is unpublished and thus

not binding precedent, it cited a published Tenth Circuit case which supports its holding,

*United States v. Bump,* 605 F.2d 548, 551 (10th Cir. 1979) (putting burden on the party

seeking the privilege to show that it had not been waived).  *Lewis* also cited a Fourth

Circuit case that supports its holding, *United States v. Jones*, 696 F.2d 1069, 1072 (4th

Cir. 1982).  There is authority from other Circuits that also hold to this effect.  *See In Re*

*VISX*, No. 672, 2001 WL 929731, at *2 (Fed. Cir. 2001); *Weil v. Investment/Indicators,*

*Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

Turning to Magistrate Judge Boland's ruling, it does appear that he clearly erred

or ruled contrary to law on this issue.  Instead of putting the burden on Hershey to show

why these redactions were proper and why the documents were privileged, he appeared

to put the burden on Plaintiffs in denying their motion to compel in connection with the

redacted documents, at least in part.  *See* Order at 29-32.  He first noted that the privilege log as to those documents stated that they are privileged because they contain legal advice from Hershey's in house counsel.  *Id.* at 30.  I find no error in this ruling.

However, Magistrate Judge Boland then stated that "[t]he plaintiffs do not provide any evidence to the contrary, nor do they advance a basis for finding that the asserted privilege has been waived.  *Id.*  He also noted as to other redactions that "the plaintiffs do not provide any evidence controverting the nature of the material withheld, nor do they advance a basis for finding that the asserted privilege has been waived."  *Id.* at 30-31.  This appears to be contrary to law since Hershey had the burden of showing that these documents were not subject to production.

Thus, I reverse the ruling of Magistrate Judge Boland and remand on this limited issue.  On remand, Magistrate Judge Boland must address, applying the proper burden of proof, whether Hershey has made an adequate showing that the redactions are proper and/or are subject to the attorney-client privilege.[2]

Finally, as to the argument that Magistrate Judge Boland clearly erred by not reviewing these documents *in camera*, I do not agree.  He was not required to review these documents *in camera* if he was able to determine from Hershey's privilege log and/or argument whether the redactions are appropriate.  Since the issue of whether

---

[2] I note that to satisfy the burden established by Rule 26(b)(5), Hershey's privilege log must describe in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted."  *Horton v. United States*, 204 F.R.D. 670, 673  (D. Colo. 2002)..  "The information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied."  *Id.*

Hershey properly redacted the documents is being remanded to him, he will need to determine on remand whether or not an *in camera* review is necessary.

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant Hershey's Rule 72 Objections to Order Requiring Corporate Executives to Testify in Person During Plaintiffs' Case are **OVERRULED**.  It is

FURTHER ORDERED that Hershey's Rule 72 Objections to July 13, 2006 Discovery Order are **OVERRULED**.  It is

FURTHER ORDERED that Plaintiffs' Rule 72 Objections to July 13, 2006 Discovery Order are **SUSTAINED IN PART AND OVERRULED IN PART** as set forth in this Order.  In accordance with my rulings on Plaintiffs' Objections, it is

ORDERED that the portion of the July 13, 2006 Order denying Plaintiffs' motion to compel regarding the redaction of suspicious documents (Order at pp. 29-32) is **REVERSED** and **REMANDED** to Magistrate Judge Boland to make findings on this issue applying the proper burden of proof.  The issue of whether David West waived the attorney-client privilege in connection with his deposition testimony about Hershey's document retention policy is also **REMANDED**, as it was not addressed in the July 13, 2006 Order.  The remainder of the July 13, 2006, Order is **AFFIRMED**.  It is

FURTHER ORDERED that the stay of discovery entered July 28, 2006, is **LIFTED**.  It is

FURTHER ORDERED that Hershey shall produce the documents ordered by

Magistrate Judge Boland to Plaintiffs by **Monday, October 20, 2006**.  It is

FURTHER ORDERED that the deposition of Jennifer Chung shall take place on

**Monday, November 20, 2006, at 8:30 a.m.** in Magistrate Judge Boland's jury

deliberation suite.  Finally, it is

ORDERED that Plaintiffs shall respond to Defendant's Motion For Summary

Judgment by **Friday, December 22, 2006.**

Dated:  September 26, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge