IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-01881-WYD-BNB

CHARLES M. KOVACS,
CHRISTINE H. BUKALA,
DANNY M TRAMMEL,
ROBERT C. McGRATH, and
JOSEPH J. RAGUSA,

Plaintiffs,

v.

THE HERSHEY COMPANY, a Delaware corporation,

Defendant.
_____

**ORDER**
_____

In his *Order* [Doc. # 464, filed 9/26/2006], the district judge remanded two discovery issues for my determination:

(1)     Whether David West waived the attorney-client privilege through his deposition testimony, id. at p.15; and

(2)     Whether Hershey has made an adequate showing that certain redactions "are proper and/or are subject to the attorney-client privilege." Id. at p.21.

**1. Waiver**

In the *Plaitiffs' Motion to Compel Withheld and Redacted Documents* [Doc. # 299, filed 4/20/2006] (the "*Motion to Compel*"), the plaintiffs argued that Hershey had waived the attorney-client privilege in myriad ways. Among them, the plaintiffs argued that David West, a Hershey senior vice president, waived the attorney-client privilege concerning Hershey's "purposeful

decision to destroy documents" during its sales force restructuring by testifying at his deposition about communications between himself and Hershey's general counsel, Burton Snyder. *Motion to Compel* at pp.12-14. In support of their assertion of waiver, the plaintiffs pointed to the following exchange during Mr. West's deposition:

> Q:   Nor you--we got into this by your saying you were seeking some waivers as to policies. Were you seeking some form of waiver as to the document retention policy?
>
> A:   The decision--the conversation on the JOS waiver would have come first, which Ms. Arline has the authority to grant. That conversation was with--was with--was with both Mr. Snyder and Ms. Arline.
>
> The outgrowth of that was because we were not going through the posting process and because it was such a confidential process that *Mr. Snyder and I had a conversation then about how document-- how documents and how the process should be recorded and there was no need for a waiver. We just looked at the policy and the policy states one record.* And Ms. Walker was then assigned to the project to give legal counsel, advice on legal issues as well as to provide that record.
>
> \* \* \*
>
> Q:   Provide what record?
>
> A:   The record of the selection process.
>
> Q:   That was tasked to Ms. Oates Walker?
>
> A:   Yes.
>
> Q:   *And what policy were you and Mr. Snyder discussing?*
>
> MR. LIPINSKY:   You can testify to the subject area but don't testify to the substance of communications to or from Mr. Snyder.
>
> A:   *We discussed the company's record retention policy.*

*Motion* at pp.12-13 (emphasis in original).

I failed to address this alleged basis of waiver in my *Order* [Doc. # 375, filed 7/13/2006], and the plaintiffs asserted that failure as a point of error in their *Rule 72 Objections to July 13, 2006 Order* [Doc. # 388, filed 7/27/2006] (the "*Objection*"). The plaintiffs' argued in the *Objection* that the quoted testimony constitutes a waiver of the attorney-client privilege, as follows:

> One [area of waiver] not addressed by Magistrate Judge Boland relates to the voluntary deposition testimony fo the former Senior Vice President of sales, David West, in which he voluntarily revealed attorney-client communications between himself and Burton Snyder, Hershey's top legal executive, on how to conform with the document retention and record-keeping policies given that Hershey was departing from normal employee selection procedures, in secretive, confidential fashion[.]

*Objection* at pp.1-2.

The attorney-client privilege protects confidential communications between an attorney and client where legal advice is sought. It is the substance of the communication that is protected by the attorney-client privilege, not the fact that there has been a communication. Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481, 484 (D. Kan. 1997). Consequently:

> A general description of the work performed by the attorney is not protected by the privilege. Acts or services performed by an attorney during the course of the representation are not within the privilege because they are not communications. The subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are also not protected by the privilege.

In re Universal Service Fund Telephone Billing Practices Litigation, 232 F.R.D. 669, 675 (D. Kan. 2005)(internal footnotes omitted). Accord Burton, 170 F.R.D. at 484-85 ( "[t]he subject matter of meetings with an attorney, the persons present, the location of the meetings, or the

persons arranging the meetings are not protected by the privilege"); Stabilus v. Haynesworth, Baldwin, Johnson and Greaves, P.A., 144 F.R.D. 258, 268 (E.D. Pa. 1992)("only the communication itself is privileged; the underlying facts, as well as the factual circumstances surrounding the attorney-client relationship, are discoverable").

In EEOC v. Johnson & Higgins, Inc., 1998 WL 778369 *13 (S.D.N.Y. Nov. 6, 1998), a case presenting facts similar to those raised here, a deponent (Shattuck) testified about the preparation of an affidavit:

> . . . J&H asked [Shattuck] to explain "how it came to pass that [he] signed the EEOC affidavit." The EEOC counseled Shattuck "not to disclose any conversations [he] had with [the] attorneys that [he was] consulting with." Shattuck answered that he "was asked to give a fair outline of [his] feelings of being coerced into signing the original affidavit or release. When I gave that affidavit to the EEOC, that was a true statement of why I felt it was--that I had been coerced into signing the release and I was happy to sign it." J&H then asked who asked him for an outline of his feelings and he said EEOC attorney LeCount-McClanahan. When J&H asked him what he tole LeCount-McClanahan about his feelings before making the outline, the EEOC instructed him not to answer on attorney-client privilege grounds stating: "I'm going to instruct you not to answer. I've allowed you to answer how the affidavit came about, but any discussions that you had with Ms. LeCount or any other attorney representing you about coercion or the facts underlying it are protected by attorney/client privilege."

(Internal citations omitted.)

The court held that Mr. Shattuck's deposition testimony did not constitute a waiver of the attorney-client privilege, stating:

> Shattuck did not disclose the substance of any other conversations he had with the EEOC. Shattuck's statement that he was "asked to give a fair outline of being coerced into signing the original affidavit," is too vague to constitute a disclosure of a "significant part" of his communications with his attorneys. It is no more than

4

> the sort of "general subject matter" description required as to documents in a privilege log.

Id.

Similarly in this case, Mr. West did no more in his deposition testimony than disclose that he had a conversation with his attorney; the general topic of the conversation; and that Hershey's decision concerning documents was based on the company's record retention policy which requires the preservation of "one record." These are not privileged matters, and the substance of any communication between Messrs. West and Snyder, which might be privileged, was not disclosed. The testimony by Mr. West that "[w]e just looked at the policy and the policy states one record," *Motion* at p.13, is no more than a general description of the subject matter of the discussion, which would be required as part of any privilege log, see Fed. R. Civ. P. 26(b)(5), and is too vague to constitute a waiver of the attorney-client privilege. EEOC v. Johnson & Higgins, 1998 WL 778369 at *13

Finally, the ultimate decision reached by Messrs. West and Snyder--that Hershey's record retention policy requires only "one record"--was not intended to be kept secret. It was the company's business decision and has been repeated to plaintiffs, the court, and others. "When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege." United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979).

I find that Mr. West did not disclose any privileged information in the deposition testimony cited to me and relied on by the plaintiffs in support of their claim of a waiver. "Disclosure of non-privileged information obviously does not waive the attorney-client privilege."

Thomas E. Spahn, A PRACTITIONER'S GUIDE TO THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, ¶7.302(A)(4) at p.185 (2001).

**2. Redactions**

In their *Motion to Compel*, the plaintiffs also sought the production of unredacted copies of certain documents. The redacted documents fall into two distinct groups.

The first redactions, which the plaintiffs characterize as "particularly suspicious," *Motion to Compel* at p.17, were attached to the *Motion to Compel*, in their redacted form, as Exhibit G (Bates Nos. H30375-76). These redactions were described by the plaintiffs as follows:

> In one, notes of Ms. Walker dated February 14, 2003, of a meeting with two human resources officials about the forthcoming sales reorganization, Hershey redacted four sets of words in the left hand margin next to the names of two Plaintiffs (Mr. Montagne and Mr. Leger), and the two former Texas Plaintiffs (Mr. Ott and Mr. Steidl). Right above these redactions in the same left-hand margin next to a female employee's name are words which are not redacted, and they say "only female RM currently." Clearly, then, Ms. Walker was taking note of gender and age issues of the region managers, or some other improper criterion. In fact, when asked in her deposition to describe the general topic of what Hershey redacted from the notes relative to the four older males who Hershey later illegally fired, she admitted that the general topic was "risk."

*Motion to Compel* at p.17.

I refused either to review these materials *in camera* or to compel production of unredacted copies, finding that Hershey had satisfied its obligation to establish that the documents were subject to the attorney-client privilege. I ruled:

> The redactions made to pages H30375-76 of Exhibit G are identified on the defendant's privilege log as subject to the attorney-client privilege because they contain legal advice from Hershey's in-house counsel, Mary Oates Walker, concerning

>selection decisions. The plaintiffs do not provide any evidence to
>the contrary, nor do they advance a basis for finding that the
>asserted privilege has been waived.

*Order* [Doc. # 375] at p.30.

The second set of redactions involve documents subpoenaed by the plaintiffs from Linda Strange, a former Hershey human resources executive. *Motion to Compel* at p.17. These documents are listed on Hershey's privilege log and are identified as Bates Nos. H28636-37.[1] The privilege log states that these documents were authored by Linda Strange on an unspecified date; were not provided to anyone else; and that portions of the documents were redacted and not produced to the plaintiffs based on the attorney-client privilege because the redacted portions "reflect[] communications with Mary Oates Walker, Esq." *Motion to Compel*, Exh.B at p.29.

I also refused either to review these materials *in camera* or to compel production of unredacted copies, finding that Hershey had satisfied its obligation to establish that the documents were subject to the attorney-client privilege. I ruled:

>Two of the redactions concern "communications with Mary Oates
>Walker, Esq.," Hershey's in-house counsel. . . . As to those
>redactions, the plaintiffs do not provide any evidence controverting
>the nature of the material withheld, nor do they advance a basis for
>finding that the asserted privilege has been waived.

*Order* [Doc. # 375] at pp.30-31.

The plaintiffs objected to my ruling on the redacted documents, arguing that I had improperly placed the burden on the plaintiffs to establish that the redacted information is not privileged rather than requiring that Hershey prove that the redactions are privileged. The district

---

[1] I ordered one of the Strange documents (Bates No. 28638) produced, finding that Hershey had failed to establish that it is entitled to protection under the attorney-client privilege. *Order* [Doc. # 375] at p.31.

judge agreed, ruling:

> My research on the issue suggests that Plaintiffs are correct. Under Tenth Circuit law Hershey has the burden of showing both that the communications at issue are privileged and that the privilege has not been waived.
>
> \* \* \*
>
> Turning to Magistrate Judge Boland's ruling, it does appear that he clearly erred or ruled contrary to law on this issue. Instead of putting the burden on Hershey to show why these redactions were proper and why the documents were privileged, he appeared to put the burden on Plaintiffs in denying their motion to compel in connection with the redacted documents, at least in part. He first noted that the privilege log as to those documents stated that they are privileged because they contain legal advice from Hershey's in house counsel. I find no error in this ruling.
>
> However, Magistrate Judge Boland then stated that "[t]he plaintiffs do not provide any evidence to the contrary, nor do they advance a basis for finding that the asserted privilege was waived. He also noted as to other redactions that "the plaintiffs do not provide any evidence controverting the nature of the material withheld, not do they advance a basis for finding that the asserted privilege has been waived. This appears to be contrary to law since Hershey had the burden of showing that these documents were not subject to production.
>
> Thus, I reverse the ruling of Magistrate Judge Boland and remand on this limited issue. On remand, Magistrate Judge Boland must address, applying the proper burden of proof, whether Hershey has made an adequate showing that the redactions are proper and/or are subject to the attorney-client privilege.

*Order* at pp.20-21 (internal citations and footnotes omitted).

The district judge found that my "imprecise words," *Reporter's Transcript: Status Conference and Hearing on Objections [etc.]* [Doc. # 462-2, filed 9/25/2006] (the "*Transcript*") at p.72 line 8, indicated that I had put the burden of proving that the attorney-client privilege had not been waived on the plaintiffs, the parties attempting to obtain disclosure of the information.

This was error because "[t]he proponent of the attorney-client privilege bears the burden of establishing both that the communications at issue are privileged and that the privilege was not waived." United States v. Lewis, 943 F.2d 58, 1991 WL 172666 at *3 (10th Cir. Sept. 5, 1991)(Unpublished Opinion).[2]

I previously ruled that Hershey identified each of the redacted documents on its privilege log and established that the documents are subject to the attorney-client privilege because they contain legal advice from Hershey's in-house counsel. The district judge found no error in that ruling. *Order* [Doc. # 464] at pp.20-21. The only issue remaining is whether Hershey has established that the privilege has not been waived.[3]

---

[2]Although the district judge found that I erred by placing the burden of proof on the plaintiffs to show that Hershey had not waived the attorney-client privilege, my "imprecise words" also were directed to the inadequacy of the plaintiffs' argument in support of the *Motion to Compel*. The plaintiffs' argument was that Hershey should be required to produce the redactions "[i]n light of [its] pattern of disregard for the true boundaries of the [attorney-client] privilege, and its waiver in multifaceted ways. . . ." *Motion to Compel* at p.18. It seems to me that a party arguing that the attorney-client privilege has been waived has some obligation to state how it claims the waiver occurred, even if the proponent of the privilege bears the burden of proving that there is no waiver. The plaintiffs failed in their *Motion to Compel* to provide any guidance as to how they believe the privilege as to the redacted documents has been waived, and their argument in the *Objection* is no more enlightening.

[3]In his oral ruling on the *Objection*, the district judge stated:

> Now, the objection raised by the plaintiff . . . is that the magistrate judge may have clearly erred by placing the burden of proof on plaintiffs regarding **waiver** of the attorney/client privilege. . . . And the legal issue I want to suggest is there's Tenth Circuit law that we found that makes it clear that . . . the burden of showing both that the communications at issue are privileged and that the privilege has not been waived belong to the party asserting the privilege, in this case it would be [Hershey].

*Transcript* at p.71 lines 77 through 23 (emphasis added).

Hershey identified each of the "particularly suspicious" redactions[4] on its privilege log as follows:

> Redacted--handwritten notes regarding legal advice concerning selection decision in 2003 Sales realignment.

In each instance, the privilege log states that the documents are dated 2/14/2003; were authored by Mary Oates Walker; and were not transmitted to anyone else. Thus, the log establishes that the attorney-client privilege was not waived by providing a copy of the documents to a third person not within the privilege.

Hershey identified the Strange redactions[5] on its privilege log as follows:

> Redacted--handwritten notes on page of spiral bound notebook reflecting communications with Mary Oates Walker, Esq.

In each instance, the privilege log states that the dates of the documents are not specified; the documents were authored by Linda Strange; and they were not transmitted to anyone else. Thus, the log establishes that the attorney-client privilege was not waived by providing a copy of these documents to a third person not within the privilege.

The descriptions of the documents contained in Hershey's privilege log appear to me to establish that there has been no waiver of the attorney-client privilege in connection with the redactions. However, in an abundance of caution I will review the documents *in camera* in order to make a final determination.

---

[4] The "particularly suspicious" redactions bear Bates Nos. H30375 and H30376 and are itemized on pages 36-37 of Hershey's privilege log [Doc. # 299-10, filed 4/20/2006].

[5] The Strange redactions bear Bates Nos. H28636 and H28639 and are itemized on pages 30-31 of Hershey's privilege log [Doc. # 299-9, filed 4/20/2006].

IT IS ORDERED that the *Motion to Compel* is DENIED insofar as it seeks an order finding that Hershey waived the attorney-client privilege as a result of the deposition testimony of David West.

IT IS FURTHER ORDERED that Hershey, on or before **October 31, 2006**, shall submit to my chambers copies of he redacted documents, bearing Bates Nos. H28636, H28639, H30375, and H30376, for *in camera* review.

Dated October 25, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge