IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-01881-WYD-BNB

CHARLES M. KOVACS,
CHRISTINE H. BUKALA,
DANNY M. TRAMMELL,
ROBERT C. McGRATH, and
JOSEPH J. RAGUSA,

      Plaintiffs,

v.

THE HERSHEY COMPANY,  a Delaware corporation,

      Defendant.

_____

**ORDER**
_____

THIS MATTER comes before the Court on three separate Motions for Summary Judgment: (1) Defendant's Motion for Summary Judgment on Claims of Plaintiffs Bukala and McGrath [Docket #251], filed on March 3, 2006; (2) Defendant's Motion for Summary Judgment on Claims of Plaintiffs Kovacs, Leger, Montagne, Ragusa, Schleppi, and Trammell [Docket #498], filed on March 6, 2006; and (3) Plaintiffs' Motion for Partial Summary Judgment [Docket #258], filed on March 6, 2006.

For the reasons stated below Plaintiff's Motion for Partial Summary Judgment [Docket #258], Defendant's Motion for Summary Judgment on Claims of Plaintiffs Bukala and McGrath [Docket #251], and Defendant's Motion for Summary Judgment on Claims of Plaintiffs Kovacs, Leger, Montagne, Ragusa, Schleppi, and Tramell [Docket #498], are DENIED.

I.    INTRODUCTION

The facts pertinent to this case are as follows.[1]  This is an age discrimination case.  Plaintiffs Charles M. Kovacs, Christine H. Bukala, Danny M. Trammell, Robert C. McGrath, and Joseph J. Ragusa, all allege that Defendant The Hershey Company ("Hershey") discriminated against them in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Plaintiffs John J. Montagne, John T. Leger, and Dean R. Schleppi were terminated from this action by Order dated May, 25, 2006.

In the First Amended Complaint, Plaintiffs allege that Hershey had a policy of replacing older, long-term sales managers and supervisors with younger employees. (Compl. ¶130).  Specifically, Plaintiffs allege that Hershey implemented an Early Retirement Program in 2003 in order to eliminate the older sales force.  (*Id.* at ¶131-141).  Plaintiffs allege that although Hershey labeled this program as voluntary, Plaintiffs were coerced into participating in the 2003 Early Retirement Program because of their respective ages.  (*Id.* at ¶142-43).

Dave West, Senior Vice-President of Sales, sent a memo to the sales force dated June 6, 2003.  In the memo, Hershey announced that it would be realigning its sales force.  The memo explained that the realignment would "not result in a major change in [Hershey's] full-time headcount," but "some displacement [would] occur within [Hershey's] workforce."  Further, the memo indicated that Hershey would be

---

[1]  To the extent the facts are undisputed, I have not cited to the record or the parties' briefs. Further, I have considered the other facts referenced in the briefs filed by the parties, but deem the facts set out herein the most relevant.

"offering an Early Retirement Program to current full-time Sales employees who were eligible for the Project Fitness ERP in 2001." The memo explained that "the ERP [would] help minimize displacement." The memo indicated that each individual's new role would be communicated "no later than July 4th." At the time that the realignment was announced, all Plaintiffs were employees of Hershey. Each Plaintiff had been eligible for the ERP in 2001 and had elected not to accept that package. Consequently, each Plaintiff received information about the 2003 ERP in the mail. The ERP Plan Document informed the recipients that they had until June 20, 2003, to accept or reject the plan.

Before the deadline to accept the ERP, Ms. Bukala was called by two Hershey employees, Woods and Tipple. Woods and Tipple asked Ms. Bukala if she had received the ERP package and if she had any questions. Ms. Bukala, in turn, asked if she was going to have a position in the realigned sales force and what that position would consist of. Woods and Tipple did not disclose to Ms. Bukala whether or not she would have a position or what it would be. Consequently, before Ms. Bukala knew whether or not she would have a position in the realigned sales force, she accepted the Early Retirement Program.

Upon receipt of the 2003 ERP materials, Mr. McGrath contacted a corporate human resources official. Mr. McGrath asked if he could have an extension to decide whether or not he would accept the ERP until he got back from a trip. The official informed Mr. McGrath that no one would receive an extension. Mr. McGrath accepted the early retirement program on June 12, 2003. After Mr. McGrath accepted Hershey's

retirement offer, another Hershey employee told him that had he not accepted, he would have a position in the realigned sales force and also informed Mr. McGrath that he could rescind his acceptance of the ERP.  At this time, however, Mr. McGrath was not given any information about what that position would be.

The remaining Plaintiffs–Kovacs, Trammell, and Ragusa–initially rejected the 2003 Early Retirement Program.  Hershey did not offer positions in the realigned sales organization to either Mr. Kovacs or Mr. Trammell.  As for Mr. Ragusa, Hershey did offer Mr. Ragusa a position in the realigned sales force, but Mr. Ragusa alleges that this position was a "3 grade demotion," that would result in a $20,000 cut in his base pay."  (Compl. ¶186).  Hershey determined that Mr. Ragusa was "not dimensionally qualified" for the positions of District Sales Supervisor, CSE Grade 208 and 209, and offered him instead a position of Retail Sales Representative.  Ultimately, Plaintiffs Kovacs, Ragusa, and Trammell, did accept the 2003 ERP Benefits.

As part of the realignment, Hershey asserts that all of the sales force was reevaluated and Hershey made a determination of whether or not each individual was qualified for positions in the realigned sales force.  Hershey admits that during the selection process, the decision-makers did not utilize Plaintiffs' personnel files.  Hershey stated that "it did not need access to the respective personnel files as the positions in the realigned Organization involved different dimensions and responsibilities from prior positions in the Sales force."  (Def.'s Reply, statement of fact ¶145).  Hershey also admits that one of its employees who participated in the selection

process described it as "somewhat subjective" and that people were commenting on individual candidates based on personal experience and from memory. *Id.* at ¶160.

II.   STANDARD OF REVIEW

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III.   ANALYSIS

As explained above, there are three pending Motions for Summary Judgment. First, Hershey filed a Motion for Summary Judgment on Claims of Bukala and McGrath [Docket #251].  Second, Hershey filed a Motion for Summary Judgement on Claims of Kovacs, Leger, Montagne, Ragusa, Schleppi, and Tramell [Docket #498].  Third, Plaintiffs filed a Motion for Partial Summary Judgment asking this Court to enter summary judgment on their first claim for relief [Docket #258].  In both of Defendant's Motions for Summary Judgment, Hershey alleges that the Plaintiffs fail to show that there is any issue of material fact regarding whether or not Hershey unlawfully

-5-

discriminated against Plaintiffs because of their age.  In Plaintiffs' Motion for Partial

Summary Judgment, Plaintiffs argue that Defendant bears the burden of proving that

the 2003 ERP was voluntary.  Plaintiffs assert that there is no genuine issue of material

fact regarding whether or not the ERP was voluntary and that they are entitled to

summary judgment on their first claim for relief.

      A.   <u>Unlawful Discrimination</u>

      Plaintiffs claim that they were all discriminated against by Hershey because of

their age.  "The ADEA states that it is unlawful for an employer 'to fail or refuse to hire

or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's age. . . .'"  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th

Cir. 2000) (quoting 29 U.S.C. § 623(a)(1).  A plaintiff who seeks to prove that an

employer discriminated against him on the basis of age "'can use either direct or

circumstantial evidence.'"  *Id.* (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th

Cir. 1994); *see also Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

"'A plaintiff proves discrimination through direct evidence by establishing proof of an

existing policy which itself constitutes discrimination.'"  *Id.* (quoting *Stone*, 210 F.3d at

1136)).  "In all other cases, the plaintiff seeks to prove discrimination through

circumstantial evidence."  *Id.*

      "In determining whether the circumstantial evidence presented by the plaintiff in

a given case is sufficient to establish a genuine issue of material fact, the Supreme

Court has directed the application of the burden-shifting framework established in

-6-

*McDonnell Douglas Corp. v. Green*, 411 U .S. 792, 802-05 (1973)." "The *McDonnell Douglas* framework comprises three burden shifting steps." *Howard*, 2005 WL 481564 at \*2. "Initially, the burden rests with the plaintiff to establish a prima facie case of discrimination." *Id.* "If the plaintiff has established a prima facie case, the burden then shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its employment action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "Finally, if the defendant articulates a nondiscriminatory reason, then the burden shifts to the plaintiff to show that the proffered reason is merely a pretext for discrimination." *Id.* "Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate." *Id.*

   B.   Defendant's Motion for Summary Judgment Regarding Claims of Bukala and McGrath

   Hershey first argues that Plaintiffs Bukala and McGrath fail to make out a prima facie case for employment discrimination.  I find, to the contrary, that there is an issue of triable fact regarding whether or not Hershey discriminated against Plaintiffs Bukala and McGrath.  To establish a prima facie case of age discrimination, the plaintiff must show that the "(1) employee was within the protected age group, (2) employee was doing satisfactory work, (3) employee was discharged, and (4) employee's position was filled by a younger person." *James v. Sears, Roebuck and Co.*, 21 F.3d 989, 992 (10th Cir. 1994).[2]  Specifically, Hershey asserts that there is no evidence that Plaintiffs

---

[2]The court recognizes that the fourth element is likely no longer necessary to make out a prima facie case of age discrimination, *See Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005); however, this element is not at issue in this motion.

Bukala or McGrath were discharged or suffered any other "adverse employment action." Hershey asserts that both Plaintiffs Bukala and McGrath voluntarily accepted the benefits of the 2003 Early Retirement Program. Plaintiffs Bukala and McGrath argue, on the other hand, that their acceptance of the Program was involuntary and that they were constructively discharged.

"A fundamental requirement of an anti-discrimination action is an adverse employment action." *Reynolds v. Cobe Cardiovascular, Inc.*, 2005 WL 3454753 *5 (D.Colo. 2005). The "Tenth Circuit has given a liberal definition to 'adverse employment action.'" *Lee v. New Mexico State Univ. Bd. of Regents*, 102 F. Supp. 2d 1265, 1274 (D.N.M. 2000). In the case at hand, Plaintiffs Bukala and McGrath argue that they were forced into involuntary early retirement. In the Tenth Circuit, involuntary early retirement can constitute constructive discharge. *See James v. Sears, Roebuck and Co.*, 21 F.3d 989 (10th Cir. 1994). "The question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Id.* at 992. "An offer of early retirement may constitute constructive discharge if the employee demonstrates each choice facing the employee makes him worse off, and if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of age." *James*, 21 F.3d 989, 993 (10th Cir. 1994).

On the record before me, I find that there remains an issue of triable fact regarding whether the 2003 Early Retirement Program was involuntary, and, thus,

-8-

constituted a constructive discharge.  Both Plaintiffs Bukala and McGrath were given less than two weeks to make their decision.  Moreover, when Plaintiffs Bukala and McGrath asked Hershey about whether or not they would have a position in the realigned sales force and what position they would have, Hershey did not give them an answer.  It remains in dispute whether or not Plaintiffs Bukala and McGrath's acceptance of the 2003 Early Retirement Program was voluntary, as Defendant asserts, or involuntary.  Accordingly, I DENY Defendant's Motion for Summary Judgment regarding the claims of Plaintiffs Bukala and McGrath.

  C. <u>Defendant's Motion for Summary Judgment Regarding Claims of Kovacs, Trammell, and Ragusa</u>

   Hershey also argues that Plaintiffs Kovacs, Trammell, and Ragusa's claims should be dismissed.  Specifically, Hershey claims that Kovacs, Trammell, and Ragusa have failed to demonstrate that there is a genuine issue of material fact as to whether the adverse action taken against them was based on their age.  Hershey argues that the undisputed facts demonstrate that Kovacs and Trammell were not the best qualified candidates for Hershey's realigned Sales organization and that Ragusa should have been offered a demoted sales position based on his qualifications.  I find Hershey's arguments regarding the claims of Plaintiffs Kovacs, Trammell, and Ragusa to be without merit.  For the reasons below, Plaintiffs Kovacs, Trammell, and Ragusa have provided evidence which supports their claim that Hershey took adverse employment action against them because of their age.

   Applying the *McDonald Douglas* framework, when a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence

that it had a legitimate nondiscriminatory reason for its action.  *McDonnell Douglas*, 411

U.S. at  802-03.  If the defendant meets its burden of production, the presumption of

discrimination is rebutted and "simply drops out of the picture."  *Id.* at 2749.  Once the

employer puts forth a legitimate, non-discriminatory reason for the adverse employment

action, the plaintiff must demonstrate that the defendant's proffered explanation is

pretextual.  *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995).  *Id.*

Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid

summary judgment, and plaintiff is not required to present direct evidence of an illegal

discriminatory motive.  *Id.*

Hershey does not dispute for purposes of its Motion for Summary Judgment that

Plaintiffs Kovacs, Trammell, and Ragusa have established a prima facie case.

Accordingly, this issue is not presently before the Court.  I find that Hershey has

articulated a legitimate, non-discriminatory reason for its actions.  Hershey asserts that

Plaintiffs Kovacs and Trammell were not offered positions in Hershey's realigned sales

organization because they were not the best qualified candidates.  As for Mr. Ragusa,

Hershey asserts that he was only offered a demoted sales position because he was not

as qualified as others who were offered positions similar to that which he held before

the realignment.  Consequently, in this case, the presumption of discrimination drops

out of the picture and Plaintiffs must demonstrate that Hershey's proffered explanations

are pretextual.

A Plaintiff can show pretext by revealing "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). My review of the record reveals evidence which would support an inference that Hershey's purported reasons for terminating Plaintiffs Kovacs, Ragusa, and Trammell, are pretextual.

First, there is evidence that Hershey's purported reasons for discharging Plaintiffs Kovacs and Trammel, and demoting Plaintiff Ragusa, are false. An employee described the selection process as "a lot of cover fire" and stated that "key positions had already been decided in people's minds, and that they needed to fill a check blank that said we've done this." (Wells Depo 14:24, 15:1-3). This employee's testimony directly counters Hershey's assertion that the employee's were selected based on their qualifications and "dimensions."

Second, Hershey based its decision of which positions to offer Plaintiffs, at least in part, on subjective criteria. The use of subjective criteria in making termination decisions is evidence of pretext. *See e.g. Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). As mentioned above, one of Hershey's employees who participated in this process described it as "somewhat subjective." Further, Thomas Smuda, another Hershey employee involved in the selection process, agreed that the selection decisions were being made based on feedback from staff members. (Smuda Depo. 296:6-9, 17-20, 22-25; 297:1-5). Mr. Smuda also agreed that during the selection meetings the decision makers did not have any historical data on any of the

candidates.  (Smuda Depo. 297:1-5).  Third, Hershey admits that it acted contrary to established policy in making Hershey's selections of which employees to offer positions.  (Def.'s Statement of Fact ¶ 422, admitted in Hershey's Reply).

For the aforementioned reasons, Defendant has not met their burden demonstrating that they are entitled to summary judgment on the claims brought by Kovacs, Ragusa, and Trammell.  To the contrary, I find that there are genuine issues of material facts as to whether or not Hershey discriminated against Plaintiffs Kovacs, Ragusa, and Trammell, because of their age.  Accordingly, I deny Defendant's motion for summary judgment on Claims of Plaintiffs Kovacs, Ragusa, and Trammell [Docket #255].

D.    <u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs assert, on the other hand, that they are entitled to summary judgment for their first claim for relief.  In their first claim for relief, Plaintiffs allege that Hershey violated the ADEA by instituting an involuntary retirement plan targeting older workers in violation of  29 U.S.C. §623(f)(2).  On its face, the 2003 Early Retirement Program appears to be voluntary.  In an explanatory memo, Hershey answered the question "What Happens If I Decline the Offer?" with an explanation that "since your election is voluntary, you will continue as an employee of the Corporation on the same basis as you are currently employed."  (Frequently Asked Questions, Doc 259, exh. 13). Plaintiffs claim, however, that the plan was implemented in a manner which made it involuntary because Plaintiffs were forced to choose between accepting the early retirement plan or getting demoted or terminated.

Plaintiffs assert that Hershey, as the employer, bears the burden of demonstrating that the retirement plan was voluntary.  Plaintiffs argue that because Hershey has not met this burden, then summary judgment is proper in this instance.  I reject Plaintiff's argument as it is contrary to the law in this jurisdiction.  The United States Court of Appeals for the Tenth Circuit treats a claim of involuntary early retirement similarly to a case of constructive discharge.  *See James v. Sears, Roebuck and Co.*, 21 F.3d 989 (10th Cir. 1994).  As explained above, "[t]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  *Id.* at 992.  "An offer of early retirement may constitute constructive discharge if the employee demonstrates each choice facing the employee makes him worse off, and "if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of age."  *James*, 21 F.3d 989, 993 (10th Cir. 1994).

Once a plaintiff has provided evidence to show that he was forced to participate in a retirement plan, the analysis does not end.  Rather, this showing satisfies only the first step of the *McDonald Douglas* analysis–the requisite *prima facie* case.  Once the plaintiff establishes the *prima facie* case, the employer can offer evidence to show it was motivated by a legitimate nondiscriminatory reason for the challenged action.  At that point, the presumption "drops out and we are left with the single issue of whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age."  *James*, at 992.  It is the

-13-

Plaintiffs' ultimate burden to show that "age was also a reason for the employer's decision, and that age was the factor that made a difference." *Id.* As explained above, there remains a genuine issue of triable fact as to whether Hershey discriminated against Plaintiffs in the 2003 Early Retirement Program.  Accordingly, I find that summary judgment on Plaintiff's first claim for relief is not proper in this case.

IV.   CONCLUSION

Based upon the foregoing, it is

    ORDERED that Defendant's Motion for Summary Judgment on Claims of Plaintiffs Bukala and McGrath [Docket #251] is **DENIED**.  It is

    FURTHER ORDERED that Defendant's Motion for Summary Judgment on Claims of Plaintiffs Kovacs, Ragusa, and Trammell [Docket # 2498] is **DENIED**.  It is

    FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Docket # 258] is **DENIED**.  It is

    FURTHER ORDERED that a status conference is set for **Friday, April 20, 2007, at 3:30 p.m.**  It is

    FURTHER ORDERED that the parties shall file separate status reports on the current status of the case, including whether or not the case may settle or proceed to trial, on or before **Friday, April 13, 2007.**

    Dated:  March 26, 2007

                         BY THE COURT:


                         s/ Wiley Y. Daniel
                         Wiley Y. Daniel
                         U. S. District Judge